[No. 26236. *En Banc.* April 13, 1937.]

*In the Matter of the Estate of* CHARLES H. HYDE, *Deceased.*

ROBERT H. HYDE, *as Executor, Appellant,* v. THE STATE OF WASHINGTON, *State Inheritance Tax and Escheat Division, by William H. Pemberton, Supervisor, Respondent and Cross-appellant.*[1]

[1]Reported in 66 P. (2d) 856.

*Wayne W. Keyes,* for appellant.

*William H. Pemberton* and *Charles Snyder,* for respondent and cross-appellant.

GERAGHTY, J.—Charles H. Hyde died October 5, 1935, leaving a will appointing his son and sole heir, Robert H. Hyde, as executor. After probate of the will and his qualification as executor, the son discovered, among the papers of his father, an instrument purporting to be the last will of his mother, Carrie A. Hyde, who had died June 5, 1912. This will had never been offered for probate, nor had the mother's estate ever been administered upon.

Upon discovering the will, the son filed a petition in the pending estate of his father, setting out a copy of the will and a statement of the property owned by his mother at the time of her death, and requested that her estate be appraised and the court fix the amount of the inheritance tax due the state of Washington. A copy of this petition was served on the supervisor of the inheritance and escheat division of the state; a hearing thereon was held, at the conclusion of which the court, among other things, found:

"That Carrie A. Hyde, wife of Charles H. Hyde, died in the city of Tacoma, Washington on June 5, 1912, leaving a last will and testament, which said will left her estate to her husband for life with power of disposal except by will, and the remainder to Robert H. Hyde.

"That said last will of Carrie A. Hyde was never admitted to probate and her husband, Charles H. Hyde, now deceased, took possession of and managed the estate, evidently assuming to act under the will. The estate was not depleted in value and the identical property left by Carrie A. Hyde has now passed to Robert H. Hyde.

"The will of Carrie A. Hyde never having been admitted to probate, therefore is entitled to no effect and

the community property of Carrie A. Hyde and Charles H. Hyde vested in her husband and her son at the time of her death, one-half to each. Said vesting being by operation of law rather than by the terms of the will."

After finding the value of the community estate as of the date of the death of Carrie A. Hyde, and having determined that her community interest vested, by operation of law, at her death in her husband and son, the court adjudged that there was due the state the sum of $1,782.29 as an inheritance tax, together with interest at the rate of six per cent per annum from June 5, 1912.

The appellant, Robert H. Hyde, appeals from the judgment, assigning, among other errors, the court's finding that the will of Carrie A. Hyde, never having been probated, was entitled to no effect, and that her interest in the community property vested, by operation of law, in her husband and son at the time of her death, one-half to each.

The respondent supervisor cross-appeals, assigning several errors, among them also challenging the court's ruling that no effect should be given to the will because it had not been admitted to probate. The supervisor, however, in his oral argument abandoned this assignment.

As to the court's ruling on the admissibility of the purported will of Carrie A. Hyde, the appellant states his position as follows:

"At the outset, it is our contention that the will of the said Carrie A. Hyde cannot lightly be brushed aside as the court evidently does by his Finding in Par. 3 of the Judgment. There is no statute of limitations governing the offering for probate of a will, and the one in question was formally offered for probate by appellant. Owing to lapse of time the only question for determination by the probate court was the

amount of inheritance tax due the state of Washington."

We agree with the appellant's statement that the will should not be lightly brushed aside or treated in the casual manner indicated by paragraph three of the judgment. We also agree that there is no statute in this state limiting the time for offering a will for probate; but we differ from the appellant's statement that the will was formally offered for probate by him.

Rem. Rev. Stat., § 1380 [P. C. § 10049], provides:

"Applications for the probate of a will and for letters testamentary, or either, may be made to the judge of the court having jurisdiction and the court may immediately hear the proofs and either probate or reject such will as the testimony may justify. Upon such hearing the court shall make and cause to be entered a formal order, either establishing and probating such will, or refusing to establish and probate the same, and such order shall be conclusive as against all the world except in the event of a contest of such will as hereinafter provided. All testimony in support of the will shall be reduced to writing, signed by the witnesses, and certified by the judge of the court."

Now, the manner in which the will was offered in evidence at the hearing was in no sense submission for probate. It was offered in evidence by the appellant as a muniment of title rather than for probate. The petition initiating the proceeding to determine the amount of inheritance tax, which had attached to it a copy of the will, did not request its probate, and the original will was not lodged in the office of the clerk. When offered in evidence at the hearing, its execution by Mrs. Hyde was testified to by one of the witnesses, the other having died. It was received and filed as an exhibit merely.

The statute quoted above provides that, upon the hearing for the probate of a will, the court shall enter a formal order either establishing and probating the will or refusing to do so, which order shall be conclusive as against all the world, except in the event of a contest of the will. All testimony in support of the will is required to be reduced to writing, signed by the witnesses, and certified by the judge. None of these formalities were had or requested by the appellant.

At common law, it was not necessary to probate a will in order to have it received in evidence as a muniment of title to realty. The will could be proved in the manner required for proof of a deed or other instrument, by production of the original. Our probate statutes, however, have changed all this, and a will is no longer effective for any purpose until it has been formally established by probate. The rule is stated in Vol. 1, § 110, of Bancroft's Probate Practice, as follows:

"The effect of modern statutes, however, is such that a will cannot be given in evidence as the foundation of a right or title unless it has been duly probated. A will which has never been offered for or admitted to probate is not admissible in an action to quiet title to realty as evidence of plaintiff's title. Probate of the will is made a condition precedent to the introduction of its contents in evidence in the subsequent settlement and distribution of the estate, and in any collateral matter except as there may be express statutory exception. But not even now is it the effect of probate to bring the will itself into legal existence by the judgment admitting it to probate. Such probate merely declares in a formal way the existence of facts which have previously occurred, and furnishes official evidence of those facts. Probate has thus become in modern theory and practice at once necessary to the admissibility of a will in evidence and to

establish its competency as evidence and its validity and effect as against all the world."

This being the rule, the trial court, in the absence of probate, properly refused to consider the will at the hearing. However, as appellant contends, and we think correctly, the existence of the will may not be ignored. It was incumbent upon the appellant himself to file it with the court for formal probate. As offered in evidence, it is only a paper writing without the verity imported by probate.

The respondent has cited some cases in which the courts have recognized agreements, joined in by all interested parties, to suppress the will and take under agreement or by the statute of descent. These cases were decided on their own facts, and, whatever may be their force, they are not applicable here, where the appellant is claiming under the will.

Our laws evidence a concern to safeguard the integrity of testamentary dispositions, as illustrated by Rem. Rev. Stat., § 1379, which makes it the duty of the person having custody or control of a will to deliver it to the superior court, or to the person named in the will as executor, within thirty days after receiving knowledge of the testator's death, under penalty of punishment as for a gross misdemeanor in case of failure. While there is no express statutory provision for compelling any particular person to initiate a proceeding to probate the will, anyone interested, including a creditor, may do so in case of the failure of the executor or other person entitled to administer to do so. We need not concern ourselves with that question here, because it is apparent that one or the other of the contending parties will be sufficiently concerned to seek the establishment of the will.

The will should be offered for formal probate and its validity established, after which such further pro-

ceedings may be had and such orders made as the necessities of the case require.

The judgment is, therefore, reversed, and the cause remanded to the superior court for further proceedings in accordance with the views expressed in this opinion.

TOLMAN, MAIN, BEALS, MILLARD, BLAKE, and ROBINSON, JJ., concur.

HOLCOMB, J. (dissenting)—The statements made in the prevailing opinion, in general, receive my hearty concurrence. The result reached in the opinion is, however, utterly inconsistent. The trial judge properly determined the issue as to the vesting of the estate by operation of law rather than by the terms of the will, and that judgment should be affirmed.

No authority has been cited or can be cited for any such result as is here reached by the majority. Rem. Rev. Stat., § 1380 [P. C. § 10049], does not authorize such procedure, and the rule quoted from 1 Bancroft's Probate Practice, § 110, is to the contrary. As stated by the majority, neither that section nor § 1379 [P. C. §10048] can compel the production of a will for probate. If appellant refuses so to offer and petition for probate, he still cannot be so compelled.

Only two persons were concerned in this estate after the death of Carrie A. Hyde, and the inference is that they agreed to take under the statute of descent and not by the will. When this proceeding was initiated, the father was dead, and the lips of the only heir were closed by that statute owing to his death.

The supervisor of the inheritance tax and escheat division of the state is not such an interested party as can compel the production and probate of a will.

Neither do I agree with the contention of appellant that the trial court had no right to disregard the will

and determine the matter under the statute of descent as he did.

This decision is a sort of *rara avis*. There is no guidance in the case for the court or the parties as to how to proceed after the will had been offered for probate.

For these reasons, I dissent.

STEINERT, C. J. (dissenting)—Inasmuch as the will of Carrie A. Hyde was never probated, nor offered for probate, the trial court properly refused to consider it as evidence in this case. The majority so holds, and I concur in that view. Under the circumstances, then, the court did the only thing that it could do. It proceeded with, and determined, the case before it on the evidence that had been properly admitted.

The majority opinion, as I construe it, holds that the *trial court committed error* because it did not suspend all proceedings until the will had been probated. But, in my opinion, the court was not required, nor did it have authority, to take that course. The court could not compel anyone to probate the will, and the law does not require it.

Rem. Rev. Stat., § 1379 [P. C. § 10048], merely requires the person having custody or control of a will to deliver it to the superior court or to the executor named in the will within thirty days after receiving knowledge of the death of the testator, with the further requirement that an executor having custody or control of the will shall within forty days present the same for probate or else present it with his written refusal to serve as executor.

In this case, the provisions with reference to the executor do not apply, for the simple reason that Charles H. Hyde was the executor named in Carrie A. Hyde's will, and he was dead at the time that her will

was discovered. Hence, under the statute, the sole duty of Robert H. Hyde, the son, who then had custody of the will, was to deliver it to the superior court. He could elect whether or not he would offer it for probate, but he could not be compelled to have it probated, nor did he offer to do so. Of course, the inheritance tax supervisor could not be compelled to probate the will.

It is true that, had the will been probated, it might have made some difference in the result reached by the trial court in the pending proceeding, but, without an established will, the court was authorized, and, I think required, to determine the issues which the parties had submitted, solely on the evidence actually before it. This the court did, and therefore it can not be charged with having committed error.

The will of Carrie A. Hyde may still be offered for probate by anyone interested in her estate, but in this proceeding, and upon the issue of the amount of inheritance tax payable, the parties have made their case, and the judgment should be made to rest thereon.

For these reasons, I dissent.